IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 2:21-CR-87-NR |
| | ) |
| RODERICK T. LONG, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

    A grand jury indicted Roderick Long with possession of material depicting sexual exploitation of a minor. At the time of the indictment, Mr. Long was on supervised release for another child pornography crime. On March 9, 2020, a law enforcement team went to Mr. Long's home to execute a search warrant. While part of the team searched the house for evidence, Corporal Nathan Brown and Trooper Joseph Streyle interviewed Mr. Long and obtained incriminating information. Now, Mr. Long seeks to suppress the statements he made; he argues that the police should have Mirandized him. The government responds that *Miranda* does not apply here because Mr. Long was not in custody during the interview. After carefully considering the parties' briefs, the law, and the evidence adduced at the suppression hearing, the Court agrees with the government and will deny Mr. Long's motion.

## DISCUSSION & ANALYSIS

    *Miranda* rights are implicated only when a suspect is subject to custodial interrogation. *See New York v. Quarles*, 467 U.S. 649, 654 (1984). This is because "the danger of coercion results from the interaction of custody and official interrogation." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Here, the parties do not dispute that the officers' express questioning of Mr. Long constituted an interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980). So the key question

1

is whether, examining the totality of the circumstances, Mr. Long was in custody when he made the statements he seeks to suppress.

A person is in custody when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (cleaned up).  When determining whether a suspect was in custody, the Court must examine the circumstances surrounding the interrogation and decide whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 100 (1995).  For this analysis, the Supreme Court and Third Circuit have identified various factors for courts to consider and balance. These factors include: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning. *United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006); *see also Howes v. Fields*, 565 U.S. 499, 509 (2012).  Weighing these factors, the Court finds that Mr. Long's interview was not custodial.

First, during the interview, the officers told Mr. Long that he was free to stop the interview at any time.  Within 30 seconds of beginning questioning, the interviewing officer asked if "you understand that you're not in custody, you're not under arrest…you don't have to talk to us, you're free to leave. If you don't want to talk to us, just tell us 'no.'"  ECF 54-1 at 0:26.  Mr. Long replied "correct."  *Id*. at 0:37.  When questioning later resumed after a break, the officers again reminded Mr. Long that "the same thing applies – you're not under arrest, you're free to leave…if you don't want to talk to us you don't have to."  ECF 54-2 at 0:15.  These explicit disclaimers weigh against finding custody. *Howes*, 565 U.S. at 503 (finding no custody, even in prison setting, where an inmate was "told that he was free to leave

and return to his cell" and "[l]ater [] was again told that he could leave whenever he wanted").

Second, the interview lasted only about 16 minutes initially, with approximately two minutes of follow-up. ECF 54-1,2. This short duration also cuts against custody. *E.g., Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (finding no custody where police interviewed a suspect for 30 minutes); *United States v. Ludwikowski*, 944 F.3d 123, 133 (finding no custody even where a suspect was at the police station for seven hours and questioned for four hours, including breaks).

Third, on balance, the Court finds that the officers did not use overly coercive or hostile tactics that compelled Mr. Long to speak. Based on the Court's review of the audio, the officers did not use a hostile tone. To be sure, several officers came to the home in their squad cars, wearing bulletproof vests and carrying guns. ECF 54, 52:18-21. The weapons were drawn when they initially entered and conducted a protective sweep. *Id.* at p. 45:21-25. The officers patted Mr. Long down and directed him to sit in the living room while they cleared the house. *Id.* at pp. 53:12-54:15. But once the protective sweep and pat-down were complete, two officers met with Mr. Long in his living room to conduct the interview. *Id.* at pp. 28:23-25; 30:6-9. No weapons were drawn or directed at Mr. Long, and the interviewing officers did not otherwise brandish their weapons during questioning. *See id.* at 24:12-17. And, again, the overall tone of the conversation and nature of the questioning was in no way hostile or coercive. As such, this factor weighs against custody. *United States v. Morgan*, 562 F. App'x 123, 130 (3d Cir. 2014) (no custody where agents "did not use hostile voices or yell, did not display their weapons, and did not handcuff [the suspect] or restrain his movement").[1]

---

[1] Mr. Long testified that the experience made him feel anxious and depressed. ECF 54, 53:5-8; 54, 20-21. But this stress does not rise to compulsion to speak. Further, some of his stress may have resulted from the trauma of his brother's recent death, *id.* at 51:3-11, and the knowledge that the police were likely to find incriminating

Fourth, the interview recording clearly demonstrates that Mr. Long voluntarily submitted to questioning. The troopers specifically told Mr. Long "you don't have to talk to us," yet he chose to answer their questions. Further, his tone in the interview was cooperative, and he otherwise didn't hesitate or express any reservation in speaking to the officers. And when Mr. Long eventually stated that he wanted to remain silent, the interview immediately ended. ECF 54, 20:10-16.

Fifth, the location and physical surroundings of the interview cut both ways, and so this factor, at most, is neutral in the Court's analysis. On the one hand, the officers interviewed Mr. Long in his home. A suspect's home is typically not a coercive setting. *Miranda v. Arizona*, 384 U.S. 436, 445, 449-50 (opining that, unlike in police-dominated atmospheres such as stationhouses, "in [a suspect's] own home he may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions of criminal behavior within the walls of his home."). On the other hand, six law enforcement team members were in and around Mr. Long's small two-bedroom home when conducting the search. ECF 54, 26:23-25; 28:9-12. While interviewing Mr. Long, two officers stood near the entrances, while a third sat a few feet away on the couch. *Id.* at pp. 57:19-58:4. The police presence could arguably suggest something closer to a custodial setting. But the Court must balance this factor against the other factors discussed, as well as the Court's own review of the audio recording. In doing so, the Court cannot find that the overall police presence in the vicinity caused the interview to rise to a custodial interrogation.

Based on a weighing of the appropriate factors here, it is clear that the interview of Mr. Long never rose to the level of a custodial interrogation. *Miranda* does not apply, so the motion to suppress must be denied.

---

evidence during their search. Life's stresses, without more, do not turn an interview into a coercive custodial situation.

4

## **CONCLUSION**

For the foregoing reasons, Mr. Long's motion to suppress physical evidence is **DENIED**.

DATE:  December 23, 2021								BY THE COURT:

												/s/ *J. Nicholas Ranjan*
												United States District Judge